ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB - 6 2007

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | Civil Action No. |
| vs. | § § | 3-07CV0254-N |
| DONALD A. ERICKSON, | § § | |
| Defendant. | § § | |

# COMPLAINT

The United States Securities and Exchange Commission files this *Complaint* against Defendant Donald A. Erickson and would respectfully show the Court as follows:

## I. Summary

1. This case involves insider trading by Defendant Erickson in the securities of Magnum Hunter Resources ("MHR"), a former NYSE-listed, Texas-based oil and gas production company.

2. In late December 2004, Donald A. Erickson, while a member of MHR's board of directors, chairman of MHR's audit committee, and a retired partner at Ernst & Young, purchased MHR call options while the company was exploring a possible merger or sale of the company. In mid-January 2005, Erickson exercised the call options, acquiring 30,000 shares of MHR common stock just two trading days before the public announcement that MHR was merging with Cimarex Energy Company ("Cimarex"). Erickson was in possession of material, nonpublic information at the time he purchased the call options, and later, when he exercised them.

3.  Erickson never disclosed the purchase of his MHR options in a Commission Form 4 filing. Erickson delayed disclosing the exercise of his MHR options, and his ultimate disclosure was materially false. In the Commission Form 4 filed 10 days late giving notice of a change in his ownership of MHR stock, Erickson stated that he had exercised the options after the merger announcement.

4.  By reason of these activities, Defendant violated Sections 10(b) and Section 16(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78p(a)] and Rules 10b-5, 16a-3(a) and 16a-3(g)(1) [17 C.F.R. §§ 240.10b-5, 240.16a-3(a) and 240.16a-3(g)(1)] thereunder. The Commission, in the interest of protecting the public from any further fraudulent activity, brings this action against Defendant seeking permanent injunctive relief, disgorgement of illicit profits, plus accrued prejudgment interest and civil monetary penalties, as well as a permanent bar against him serving as an officer or director of a public company.

## II.  Jurisdiction

5.  The Commission brings this action pursuant to the authority conferred upon it by Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)]. The Commission seeks the imposition of civil penalties pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

6.  This Court has jurisdiction over this action pursuant to Sections 21(d), 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1 and 78aa]. Defendant, directly and indirectly, made use of the mails and of the means and instrumentalities of interstate commerce in connection with the acts, practices and courses of business described in this *Complaint*.

7.     Venue is proper because transactions, acts, practices and courses of business described below occurred within the jurisdiction of the Northern District of Texas.

### III.    Defendant

8.     Donald A. Erickson, age 63, is a resident of Dallas, Texas. Defendant was a member of the MHR board of directors from February 2004 to approximately June 2005. Currently, Erickson is president and sole owner of Erickson Partners, LLC, a business valuation consulting company based in Dallas, Texas.

### IV.    Statement of Facts

#### A.    Background

9.     Magnum Hunter Resources was an Irving, Texas-based oil and gas production company. Before its merger with Cimarex on June 6, 2005, MHR's common stock traded on the NYSE and was registered with the Commission pursuant to Section 12(b) of the Exchange Act.

10.    Cimarex Energy Company is an NYSE-listed oil and gas exploration and production company with headquarters in Denver, Colorado. Cimarex's common stock trades on the NYSE under the symbol "XEC" and is registered with the Commission pursuant to Section 12(b) of the Exchange Act. Cimarex acquired MHR in June 2005, following the January 26, 2005 public announcement of the approved plan of merger.

11.    In June 2003, Erickson retired from a 19-year career at Ernst & Young, LLP, where he spent 17 years as the partner-in-charge of Ernst & Young's southwest region business valuation consulting practice. Erickson is a sophisticated investor who actively directs specific securities transactions in his brokerage accounts.

12.  Erickson joined the board of directors of MHR in February 2004. Erickson served on the company's compensation and audit committees, becoming the audit committee chairman in mid-2004, and thereby assuming responsibility for high level oversight of the financial activities of the company.

13.  MHR had a *Code of Business Conduct and Ethics ("Code of Conduct")* that was posted on the company's intranet, distributed to and receipt acknowledged by all MHR employees, officers, and directors.

14.  Erickson received and reviewed the *Code of Conduct* upon his hiring in February 2004.

15.  Among other things, the *Code of Conduct* provided: "No director, officer or employee of the Company shall engage in transactions in any securities, whether of Magnum Hunter, or of any other public companies, while in possession of material nonpublic information regarding such securities, so-called 'insider trading.'" The document defined "material" information as, "any information, whether positive or negative, that a reasonable investor could consider important in deciding whether to buy, sell or hold the securities in question," and listed as examples "information concerning sales, earnings, acquisition targets or potential targets or potential mergers." The *Code of Conduct* explicitly stated that the "use of inside information for personal benefit or disclosure of inside information to others is not only a violation of company policy, but it is also a violation of securities laws that can result in substantial civil and criminal penalties, including fines, penalties and/or imprisonment."

16.  Further, the *Code of Conduct* explained that: "Information that something is likely to happen, or even that it may happen, can be considered material. For example,

if someone learns that Magnum Hunter is involved in negotiations to acquire a company, even though no agreement has been reached, that person would probably be in possession of material information."

17. MHR also circulated to its employees a memorandum entitled *Obligations & Liabilities under the Federal Securities Laws*," which Erickson received and reviewed upon his hiring in February 2004, and again at his request in January 2005.

18. The memorandum clarified that Rule 10b-5 of the Exchange Act prohibits persons from trading in securities while in possession of material information and outlined the remedies available to the Commission. The definition of materiality in the memorandum further explained: "Information is deemed material if it would be deemed important by a reasonable investor in deciding whether to buy, sell, or refrain from any activity regarding the Company's securities . . . [or] if it were likely to have a significant impact on the market price of the Company's securities." Among the many examples of material inside information included in the memorandum were the following: "a significant change in earnings or earnings projections," "negotiations and agreements regarding significant acquisitions, divestitures, or business combinations" and "major management changes." In addition, the document instructed MHR directors to "maintain inside information about the Company in strict confidence."

**B.  Erickson's Insider Information and MHR Trades**

19. On October 7, 2004, MHR announced publicly that it was evaluating its strategic alternatives and the board of directors hired investment banking firms and outside counsel to advise the company on its business alternatives. This process ultimately led to the merger of MHR with Cimarex in June 2005.

20. During the strategic alternatives evaluation and the merger process, Erickson participated in every significant decision regarding the company and gained access to the investment bankers' detailed financial analysis regarding the merger, including the estimated range of price-per-share exchange ratios and the projected completion dates of key pre-merger events.

21. In late November and acting at the direction of the board, the investment bankers identified five companies expressly interested in either acquiring or combining with MHR. Each of the five companies received a confidential, nonpublic bid process letter on or about December 6, 2004, outlining the bidding process and providing firm dates for the submission of initial bids and for binding offers. The company established a "data room" as the site for confidential bid-related documents and began hosting the interested companies, giving their due diligence teams access to MHR's financial, operating, and legal records and information. All of these events were confidential and nonpublic.

22. By December 10, 2004, the MHR board and its advisers had narrowed the field of contending companies and had resolved to pursue either a sale of MHR or a merger. At the board meeting held on December 10, Erickson received a copy of the investment bankers' "Strategic Process Update" ("SPU"), which bore the header "Strictly private & confidential," and which detailed specific price and date forecasts relating to the possible merger or sale of the company.

23. The SPU provided the board members with specific valuation ranges for the company under various scenarios, and the estimated range of share price exchange

ratios the company could expect in the event of a corporate merger. In addition, the SPU provided a timeline of critical events, as follows:

| | |
|---|---|
| December 15: | Draft of Purchase and Sale Agreement ("PSA") distributed to potential partners. |
| December 22: | Written indications of interest due from potential partners. |
| December 23: | MHR and its advisers provide feedback on proposals as soon as practicable. |
| January 6, 2005: | Firm binding offers due from potential partners via mark up of PSA. |
| January 7: | Review of offers with MHR Board of Directors and selection of one or more partners to commence negotiations/due diligence. |
| January 10: | MHR, Deutsche Bank and Merrill Lynch to commence due diligence on potential partners. |
| Mid to end Jan: | Board of Directors vote and sign PSA. Announce transaction. |

24. Thus, as of December 10, 2004, Erickson was in possession of the investment bankers' best estimates about the type of transaction that would occur and the range of share price exchange ratios in the event of a merger. He also knew that the public announcement of the transaction was projected to occur within the latter two weeks of January 2005.

25. According to plan on December 15, 2004, a confidential draft of the purchase and sale agreement was distributed for comment and revision to the "potential partner" companies selected by the MHR board. By noon on December 22, 2004 the board of directors expected to receive each potential bidder's initial offer, which was

required to include price and form of consideration, any foreseeable contingencies, any issues relating to the purchase and sale agreement, and any other pertinent information.

26. On December 16, 2004, Morgan Johnston, MHR's general counsel, sent an e-mail to Erickson, in response to a voice message Erickson left for Johnston earlier that same day. In the voice message, Erickson asked Johnston whether trading in MHR securities was "closed" for MHR insiders. During this e-mail exchange, Erickson gave Johnston no details about the MHR options transaction he was contemplating, such as the nature of the trade (whether stock or options), the dates of any intended trades, or the expiration date of the options period.

27. In his e-mail response, Johnston attached a 2002 informational memorandum from MHR's outside legal counsel addressing potential federal securities laws violations for short swing profits in connection with a hedging transaction.

28. A "call option" is a securities hedging transaction that gives the holder the right to buy a certain quantity, usually 100 shares, of an underlying security at a specified price up to a specified expiration date. A call option gives the purchaser the right to "call in" or buy stock, and profit is made on a call option when the underlying stock increases in price.

29. On December 20, 2004, Erickson purchased 300 MHR January call options through his Banc of America and Merrill Lynch brokerage accounts. Each call option gave Erickson the right to purchase 100 shares MHR common stock at $12.50 each by the expiration date of January 22, 2005.

30. In addition, on the same day, Erickson purchased 40 January 15, 2005 MHR call options through his Banc of America brokerage account, each of which gave

him the right to purchase 100 shares MHR common stock at $15 each by the expiration date of January 15, 2005. Erickson later chose not to exercise these contracts and instructed his brokers to allow the January 15, 2005 options to expire.

31. On December 22, 2004, Cimarex and two other companies submitted initial bids. The MHR board of directors met to discuss the bids in detail the next day, resolving at the meeting to give each bidder until January 6, 2005 to complete their board approval processes. On January 6, 2005, all three companies updated their prior bids.

32. During the early to mid-January timeframe, the MHR board of directors reviewed detailed financial information from each of the three companies. On January 11, 2005, the board resolved to pursue a merger with Cimarex.

33. Erickson attended every board of directors meeting and participated in all the board decisions leading up to, and following the January 11 meeting.

34. By the time the full MHR board, including Erickson, met on January 20, 2005 to discuss the structure of the transaction, most of the major terms of the merger agreement between Cimarex and MHR had been finalized.

35. On January 17, during the week of final negotiations with Cimarex regarding the impending merger, Erickson sent to Johnston in a single e-mail with the following questions: "After the black out/quiet period ends what are the rules concerning options? Can I write call options to reduce my risk/basis in MHR stock? Can I buy call options in a potential acquirer? Can I buy stock in a potential acquirer?" At the time of this January 17 e-mail, a black-out was in effect prohibiting trading in MHR securities by corporate insiders. Johnston responded to the e-mail that he needed more information before he could answer Erickson's questions.

Complaint
*SEC v. Donald A. Erickson*

Page 9

36. On January 19, 2005 at 8:23 A.M., Erickson asked Johnston via e-mail for a "summary bulletin that summarizes all the insider trading rules."

37. At 9:28 A.M. that same day, Johnston forwarded to Erickson a copy of the memorandum *Obligations & Liabilities under the Federal Securities Laws*," which Erickson had previously received and reviewed in February 2004.

38. On January 19, 2005 at 1:07 P.M. and 1:30 P.M. that same day, only hours after receiving and reviewing the insider trading policy, Erickson sent separate e-mails to his two brokers, instructing them both to exercise his MHR call options set to expire on January 22, 2005 and acquire the optioned MHR stock.

39. On January 21, 2005, Erickson took possession of 30,000 shares of MHR common stock in the two transactions.

40. Before the opening of the NYSE trading market on January 26, 2005, MHR and Cimarex issued a joint press release announcing the merger. Later that day, MHR's stock price closed at $14.74, a 12% increase from its closing price of $13.14 the day before the merger was announced.

41. When the market closed on January 27, 2005, Erickson's trading profits were approximately $46,200 on the MHR shares of common stock he had purchased after the exercise of his options contracts.

### C. Erickson's Reporting Delinquencies

42. Erickson never filed the Commission Form 4 required to disclose his purchase of MHR options on December 20, 2004.

43. On the morning of January 27, 2005, the day after the public announcement of the merger and two days after the Commission Form 4 filing deadline,

Erickson sent the following e-mail message to Johnston: "I purchased some call options back in December prior to the quiet period. Do I need to file [sic] out a [sic] SEC form? I exercised them last week prior to expiration so now I have more shares. Let me know what info you need."

44. On January 31, 2005, Johnston responded that he could file the forms on Erickson's behalf, but that he needed to know the details of the transaction, such as the date, the amount of shares acquired, and the exercise price.

45. On February 1, 2005, in an e-mail Erickson furnished to Johnston the information he had requested. This e-mail was the first time Erickson had provided Johnston with the details of either the purchase or exercise of his MHR call options.

46. Ultimately on February 4, 2005, ten days late, Johnston filed the Commission Form 4 on Erickson's behalf. The form was not manually signed, contrary to the Exchange Act rule governing its preparation, and inaccurately reflected an option expiration and exercise date of January 31, 2005, ten days after Erickson's actual exercise.

## CLAIMS

### FIRST CLAIM

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder**

47. Plaintiff Commission repeats and incorporates by reference paragraphs 1 through 46 of this *Complaint* as if set forth *verbatim* herein.

48. Defendant, as the chairman of MHR's audit committee and a member of its board of directors, owed fiduciary duties to MHR and its shareholders. Alternatively, Defendant owed duties to MHR as the source of the confidential information. As a

result, he had a duty of trust and confidence to not trade MHR securities on the basis of material nonpublic information.

49. In breach of these duties, and for his personal benefit, Defendant purchased and exercised MHR call options and took possession of MHR stock on the basis of material nonpublic information. Defendant knew or was severely reckless in not knowing that the information in his possession was material and nonpublic and that his trading on the basis of the information was improper and in breach of his duties.

50. By reason of the foregoing, Defendant violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM

**Violations of Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)] and Rules 16a-3(a) [17 C.F.R. § 240.16a-3(a)] and 16a-3(g)(1) [17 C.F.R. § 240.16a-3(g)(1)] thereunder**

51. Plaintiff Commission repeats and incorporates by reference paragraphs 1 through 46 of this *Complaint* as if set forth *verbatim* herein.

52. Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)] mandates that officers, directors and persons directly or indirectly holding more than ten percent of any class of any registered security periodically file statements with the Commission regarding changes in their ownership of that security. Exchange Act Rule 16a-3(g)(1), in turn, requires that a statement of changes in beneficial ownership, or a Form 4, be filed by such persons to report "all exercises and conversions of derivative securities . . . before the end of the second business day following the day on which the subject transaction has been executed." Further, Exchange Act Rule 16a-3(g)(1) provides: "A

Form 4 must be filed to report: All transactions not exempt from Section 16(b) of the Act . . . ." The market purchase of a fixed price derivative security is not exempt from Section 16(b). Exchange Act Rule 16a-3(a) [17 C.F.R. § 240.16a-3(a)] requires the use of Commission Form 4 for the filing of those statements.

53. Defendant failed to file the requisite Form 4 reflecting his purchases of MHR options during December 2004. Defendant's Form 4 reflecting his exercise of MHR options during January 2005 was filed ten days late and contained materially false information.

54. By reason of the foregoing, Defendant violated and, unless enjoined, will continue to violate Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)] and Rules 16a-3(a) [17 C.F.R. § 240.16a-3(a)] and 16a-3(g)(1) [17 C.F.R. § 240.16a-3(g)(1)] thereunder.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(i) permanently enjoining Defendant from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

(ii) permanently enjoining Defendant from violating 16(a) of the Exchange Act [15 U.S.C. § 78p(a)] and Rules 16a-3(a) [[17 C.F.R. § 240.16a-3(a)] and 16a-3(g)(1) [17 C.F.R. § 240.16a-3(g)(1)] thereunder;

(iii) ordering Defendant to pay civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1] for his violations of the federal securities laws as alleged herein;

(iv) ordering Defendant to disgorge all ill-gotten gains from the conduct alleged herein, with prejudgment interest;

(v) pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], ordering that Defendant be permanently prohibited from acting as an officer or director of any issuer that has a class of securities registered pursuant to Sections 12(b) or 12(g) of the Exchange Act [15 U.S.C. §§ 78l(b) or 78l(g)] or that is required to file reports pursuant to 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]; and

(vi) granting such other relief as this Court may deem just and appropriate.

Dated: February 6, 2007.

Respectfully submitted,

*[signature]*

MARSHALL GANDY
Texas Bar No. 07616500
SECURITIES AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-6464
(817) 978-4927 (fax)
gandym@sec.gov

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET — ORIGINAL

RECEIVED FEB 6 2007 CLERK, U.S. DISTRICT COURT TEXAS

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I.(a) PLAINTIFFS**
SECURITIES AND EXCHANGE COMMISSION

**DEFENDANTS**
DONALD A. ERICKSON

**3-07CV0254-N**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Dallas
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEY (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Marshall Gandy, Esq.
Securities & Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-6464

ATTORNEYS (IF KNOWN)
Patrick Craine, Esq.
Munsch, Hardt, Kopf & Harr
4000 Fountain Place
1445 Ross Avenue
Dallas, TX 75202
(214) 855-7547

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Cases Only) (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 156 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 640 R.R. & Truck | | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs. | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 820 Copy rights | ☐ 810 Selective Service |
| ☐ 153 Recovery OF Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | ☐ 830 Patient | ☒ 850 Securities Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | ☐ 840 Trademark | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395FF) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 550 Civil Rights | | ☐ 871 IRS - Third Party 26 USC 7609 | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (Specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
Sections 10(b) and 16(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78p(a)] and Rules 10b-5, 16a-3(a) and 16a-3(g)(1) thereunder [17 C.F.R. §§240.10b-5, 240.16a-3(a) and 240.16a-3(g)(1)].

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint: JURY DEMAND ☐ YES ☒ NO

**VIII. RELATED CASE(S)** (See Instructions): IF ANY   JUDGE _____   DOCKET NUMBER _____

DATE: February 6, 2007   SIGNATURE OF ATTORNEY OF RECORD: Marshall Gandy 2/6/07

FOR OFFICE USE ONLY
Receipt # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____